DECISION
{¶ 1} Chrysler LLC ("Chrysler") filed this action in mandamus, seeking a writ to overturn the order of the Industrial Commission ("commission") which granted permanent total disability ("PTD") compensation to Patricia A. Moulton. *Page 2 
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the request for a writ.
 {¶ 3} Chrysler has filed objections to the magistrate's decision. Counsel for Patricia Moulton and counsel for the commission have each filed a memorandum in response. The case is now before the court for review.
 {¶ 4} Patricia Moulton worked on a Chrysler assembly line for 20 years. Her recognized conditions include lumbosacral strain, herniated disc at L5-S1 and pain in her hands, wrists, elbows, shoulders, neck and upper back. She is physically incapable of resuming assembly line work, but is capable of sedentary work. Her entitlement to PTD compensation turns upon an analysis of a variety of vocational factors.
 {¶ 5} Patricia Moulton filed her first application for PTD compensation in 2003. It was denied based upon an analysis of the pertinent vocational factors, especially including her failure to seek any additional vocational training. As a result, she sought help in acquiring additional skills through a rehabilitation provider sponsored by Chrysler.
 {¶ 6} The provider found Patricia Moulton could not feasibly be rehabilitated. She had not done anything but assembly line work for 20 years and her two relatively brief stints as a receptionist occurred at a time when receptionists did not have to have extensive computer skills and skills managing complex telephone systems.
 {¶ 7} Counsel for Patricia Moulton filed a second application for PTD compensation. Based upon the changed circumstances, a staff hearing officer ("SHO") *Page 3 
granted the compensation. Reconsideration was denied, following which Chrysler filed this action in mandamus.
 {¶ 8} Our magistrate made the finding that the commission acted within its discretion in granting PTD compensation. Counsel for Chrysler objects to this finding based upon two particulars:
 I. The Magistrate erred in finding that Moulton was not required to seek employment or enhance her re-employment potential after her initial permanent total disability application was denied.
 II. The Magistrate erred in finding that the May 5, 2005 Vocational Closure Report is "some evidence" to support the award of permanent total disability compensation where the report does not support the Magistrate's conclusion that Moulton is permanently and totally disabled from a vocational standpoint.
 {¶ 9} Addressing the first objection, Patricia Moulton clearly did attempt to enhance her re-employment potential. Her challenges were deemed insurmountable due to a variety of reasons. She is now 64 years of age and was 63 when the SHO granted her second application. She has had two back surgeries, but still suffers from a variety of painful conditions. She has to keep changing physical positions to alleviate her pain. She has no transferable skills from her line working with Chrysler. Her brief stints as a receptionist are now almost 30 years in the past, resulting in few, if any, transferable skills. She has consistently maintained that she would work if she could. Her attempt to be rehabilitated by working with Chrysler's chosen rehabilitation source is a vocational positive which offsets her earlier failure to attempt rehabilitation. *Page 4 
 {¶ 10} The SHO and the magistrate were well within their discretion to find that a failure to seek further rehabilitation and to conduct a job search did not bar Patricia Moulton from receiving PTD compensation.
 {¶ 11} The first objection is overruled.
 {¶ 12} The second objection misconstrues what occurred, both before the SHO and the magistrate. Analysis of vocational factors is strictly the province of the commission. They can utilize one vocational report or a dozen of them, but are bound by no one else's view of the vocational factors. The SHO analyzed the factors and awarded PTD compensation. The magistrate acknowledged that a different weighing was possible, but found the commission/SHO was within its discretion to weigh things the way they were weighed. The magistrate was correct.
 {¶ 13} The second objection is overruled.
 {¶ 14} We adopt the findings of fact and conclusions of law contained in the magistrate's decision. We, therefore, deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied. BROWN and SADLER, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE`S DECISION IN MANDAMUS {¶ 15} Relator, Chrysler LLC, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") *Page 6 
compensation to respondent Patricia A. Moulton ("claimant"), and ordering the commission to find that claimant is not entitled to that compensation.
Findings of Fact: {¶ 16} 1. Claimant has sustained two work-related injuries and her claims have been allowed for the following:
 98-625855: LUMBOSACRAL STRAIN (Emp. FROI-1 Cert. 4/21/99); HERNIATED DISC L5-S1 (DHO 6/23/00).
 L217823-22: PAIN IN HANDS AND BOTH WRISTS; PAIN IN BOTH ELBOWS; PAIN IN BOTH SHOULDERS; PAIN IN NECK/UPPER BACK (Emp. Cert. C-50 10/12/92).
 {¶ 17} 2. Claimant last worked in June 1999, approximately six months after the 1998 injury to her back.
 {¶ 18} 3. Claimant filed her first application for PTD compensation on March 16, 2003. At that time, claimant was 59 years old. On her application, claimant indicated that she had graduated from high school, was able to read, write, and perform basic math, and that she had never participated in rehabilitation because she felt she was too old. Claimant's previous work consisted of 20 years on the assembly line for relator and approximately one and one-half years as a receptionist.
 {¶ 19} 4. Claimant's application was heard before a staff hearing officer ("SHO") on March 15, 2004, and was denied. The SHO concluded that relator was capable of performing at a sedentary work level. Thereafter, the SHO analyzed the nonmedical disability factors and found that relator's age was not a barrier to reemployment, that her high school degree was a positive factor, and that she had a long history working in both unskilled and semi-skilled work. Further, the SHO cited the reports of two vocational *Page 7 
experts who had specifically identified several jobs which claimant was capable of performing. Lastly, the SHO noted that claimant had not availed herself of any kind of vocational rehabilitation following her last surgery in 2001 or after the removal of scar tissue in 2002. The SHO held claimant's failure to seek rehabilitation or to look for other work against her and considered that an additional factor in denying her application.
 {¶ 20} 5. In April 2005, a vocational assessment was prepared by the staff at Careworks. For purposes of the report, it was assumed that claimant was capable of sedentary work with alternating sitting and standing. The evaluator noted that claimant had worked for approximately 20 years as a automobile assembler. This job was unskilled medium strength work. Claimant also reported that, 25 years ago, she had worked as a receptionist at a dental office for approximately nine months and as a receptionist at a hotel for approximately one year. The evaluator described those jobs as sedentary and semi-skilled. The evaluator also noted that semi-skilled and skilled work skills are generally considered transferable. The evaluator analyzed the transferable skills which one would be expected to have gained based upon claimant's work as a receptionist and identified several jobs which would be available to a person who possessed those transferable skills. However, the evaluator also noted that claimant's work as a receptionist was more than 25 years ago and that many technological and information system changes had taken place which needed to be considered. With regards to the jobs which had been identified, the evaluator noted that the majority of those jobs required the ability to compile data, invoice and schedule and that these functions now require computerized systems or knowledge of computer programs to perform. The evaluator determined that claimant would have much difficulty obtaining *Page 8 
employment in any of the identified areas without some computer knowledge or experience within the past few years. In conclusion, the evaluator determined that claimant was not a candidate for vocational retraining and that it would be difficult for claimant to re-enter the competitive labor market as follows:
 * * * While formal transferable skills analysis indicates there are jobs that Ms. Moulton could perform in the local economy, it is this case manager's opinion that the skills upon which transferability are based are questionable in view of the length of time since they have been utilized and that work performed more than 25 years ago is of questionable relevancy now due to the significant techno-logical and industry changes over the course of time. Ms. Moulton is approaching retirement age, has been deter-mined unable to perform work functions by Social Security, possesses no relevant recent work experience, requires work that will allow special considerations in terms of standing and sitting, and has no knowledge of current information technology systems, etc. While placement in one of the jobs outlined above may certainly be a possibility, it is felt that this would be difficult without special assistance in addition to basic entry level computer training and world of work counseling/exposure to re-enter the competitive labor market.
 {¶ 21} 6. Two other vocational reports are in the record. In his September 14, 2006 report, James H. Houck ultimately concluded that if so motivated, and with the utilization of appropriate job seeking skills techniques, claimant should be considered capable of performing sustained remunerative employment. Joseph A. Havranek authored a report dated August 26, 2006, and an addendum dated November 13, 2006. Mr. Havranek identified the January 2004 rehabilitation assessment performed by Barbara Gearhart and Theresa Kahler who had concluded that claimant had no transferable skills, that her skills for office work were too remote to be used in the current work place, that claimant would require retraining in order to perform clerical work, and *Page 9 
that claimant would experience pain to the point where she would be an unproductive employee. Mr. Havranek ultimately concluded that claimant was incapable of resuming any sustained remunerative employment.
 {¶ 22} 7. Claimant's second application for PTD compensation was heard before an SHO on April 30, 2007. The SHO again concluded that claimant could perform at a sedentary level and this finding is not at issue in this mandamus action. Thereafter, the SHO considered the vocational factors and stated:
 Again, this Staff Hearing Officer finds that the crux of this decision revolves around the vocational factors. It is reasonably well established that the Injured Worker could perform work at least a sedentary level.
 The basis for the prior denial was the fact that the Injured Worker had not gone through rehabilitation services or made every effort to mitigate her damages in Permanent Total Disability. While the Injured Worker has still not looked for employment in any of the areas which were previously identified to be within her physical and vocational abilities, the Injured Worker did attempt rehabilitation efforts through an employer sponsored rehabilitation provider. However, as a result of that rehabilitation attempt, the vocational rehabilitation was closed on the basis that the Injured Worker was not feasible for rehabilitation. The rehabilitation person determined that any transferable skills the Injured Worker had were dated and not transferable to any type of sedentary industry in the current technological market.
 The Vocational Assessor opined that the skills upon which transferability is based are questionable, as a result of, the length of time since they have been utilized in the work performed more than 25-years-ago. In addition, those skills are of questionable relevance now due to the significant technological industry changes over the course of time. The Injured Worker requires work that will allow special consideration in terms of standing and sitting, and has no knowledge of current information technology systems, etc. Although, the Injured Worker did indicate that she does play with the home computer, as far as e-mailing friends. The *Page 10 
Vocational Assessor goes on to opine that while the jobs outlined may certainly be a possibility, it is felt that this would be difficult, at best, without special assistance in addition to basic entry-level computer training and a world of work counseling/exposure to re-enter the complex labor market. The Injured Worker Rehabilitation Program was closed on the basis of lack of feasibility for retraining and re-employment ability.
 This Staff Hearing Officer finds that there are other vocational reports on file, which contradicts the Employer's rehabilitation closure. However, the other vocational evidence is not particularly relevant if the Employer's Rehabilitation Program will not accept the Injured Worker in for retraining or job skill seeking. Without those retraining efforts and some remedial retraining and/or computer training, the Injured Worker is not in a position to re-enter the workforce, according to that examiner. Therefore, this Staff Hearing Officer finds it impossible to disregard the Vocational Rehabilitation closure as the Injured Worker then has no other vocational rehabilitation option within the claim.
 * * * The onset date for Permanent Total Disability is 5/5/2005, which is the date of the Vocational Closure Report from the Self-Insured Employer.
 {¶ 23} 8. Relator's request for reconsideration was denied by order of the commission mailed July 20, 2007.
 {¶ 24} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by *Page 11 
entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 26} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 27} In this mandamus action, relator argues that the commission abused its discretion in granting claimant PTD compensation in spite of the fact that claimant failed to seek employment or otherwise enhance her re-employment potential after her first application for PTD compensation was denied and that the vocational closure report relied on by the commission does not constitute "some evidence" supporting the commission's order. For the reasons that follow, this magistrate disagrees. *Page 12 
 {¶ 28} In March 2004, claimant's first application for PTD compensation was denied. The SHO relied upon vocational reports which identified certain employment options available to claimant. Further, the SHO denied her request for PTD compensation because she had not sought any kind of vocational rehabilitation and because she had not looked for any other type of employment within her physical capabilities.
 {¶ 29} As noted in the findings of fact, after her first application for PTD compensation was denied, claimant sought vocational services. The vocational evaluator determined that claimant had no transferable skills resulting from her 20 years on the assembly line. Further, the evaluator noted that ordinarily it could be presumed that claimant's prior work as a receptionist would have provided her with some transferable skills. However, because claimant's work as a receptionist was approximately 25 years in the past and because of technological and industrial advances, the evaluator concluded that claimant did not have any skills which would be transferable to those jobs which it would otherwise be presumed that claimant could perform. The evaluator ultimately determined that without special assistance in addition to basic entry-level computer training and world of work counseling/exposure, it would be difficult for claimant to re-enter the competitive labor market. As such, the evaluator closed claimant's vocational file because there were no services which they could provide.
 {¶ 30} Contrary to relator's argument, there is no reason to exclude the vocational closure report relied on by the commission. Relator continues to argue that claimant possesses excellent vocational factors and that the vocational evidence relied upon by the commission is inaccurate. Further, relator takes issue with the evaluator's statement that "[w]hile placement in one of the jobs outlined above may certainly be a possibility, it is *Page 13 
felt that this would be difficult without special assistance in addition to basic entry level computer training and world of work counseling/exposure to re-enter the competitive labor market." Relator contends that this does not constitute some evidence that claimant cannot return to work.
 {¶ 31} The magistrate rejects relator's arguments for the following reasons. First, it must always be remembered that hearings on successive applications are considered de novo. Further, because weight and credibility of the evidence are to be determined by the commission, and because it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a contrary decision, if there is "some evidence" in the record, mandamus will not lie. The same SHO considered claimant's two applications and reached different conclusions. In denying the first application, it was specifically noted that claimant had made no attempts at vocational rehabilitation. Following this denial of her application, claimant pursued vocational rehabilitation. Claimant's vocational file was closed based upon a finding that she was not a good candidate for rehabilitation as she lacked transferable skills. Even though there is other vocational evidence in the record, both supporting this conclusion and contrary to this conclusion, the SHO relied upon this evaluator's conclusions. Relator's contention that this report does not constitute "some evidence" is rejected. As such, the vocational closure report constitutes some evidence upon which the commission could rely in determining that claimant lacked transferable skills and that she was not a viable candidate for rehabilitation.
 {¶ 32} Second, because the commission determined that claimant was not a viable candidate for rehabilitation and that she lacked transferable skills, the fact that claimant did not seek employment is immaterial. Relator seems to argue that, following *Page 14 
the first order denying her application for PTD compensation, claimant was required to both seek vocational rehabilitation and seek other employment. Because claimant did not seek other employment, relator argues that her second application had to be denied.
 {¶ 33} Relator's argument is not well-taken. After her first application was denied, claimant sought vocational rehabilitation. Because the evaluator determined that claimant lacked transferable skills and was not a viable candidate for rehabilitation, no services were provided to claimant. Claimant was not required to seek employment after the evaluator determined that she was not a candidate for vocational rehabilitation services and that reemployment would be difficult. At claimant's hearing on her second application, the SHO had this additional evidence and ultimately weighed the evidence differently. This does not constitute an abuse of discretion entitling relator to a writ of mandamus ordering the commission to deny claimant's application.
 {¶ 34} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in granting claimant PTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1